FILED

2012 Aug-22  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **DEBBIE GREENWELL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:11-CV-2313-RDP** |
| | } | |
| **UNIVERSITY OF ALABAMA BOARD** | } | |
| **OF TRUSTEES, et al.** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

The court has before it Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support Thereof (Doc. # 21), filed February 3, 2012. The Motion has been fully briefed (Docs. # 22-24). For the reasons discussed below, Defendant's Motion is due to be granted in part and denied in part.

## I.     BACKGROUND

Plaintiff initiated this lawsuit on June 28, 2011, and Defendants filed a Motion to Dismiss on July 21, 2011. On December 15, 2011, the court determined that Plaintiff's original Complaint was a shotgun pleading and directed Plaintiff to replead her claims in compliance with the Federal Rules of Civil Procedure. (Doc. # 16). The court provided Plaintiff with specific instructions on how to remedy her shotgun pleading. (Doc. # 17).

Plaintiff filed her First Amended Complaint on January 20, 2012.[1]  She asserts claims against the University of Alabama Board of Trustees[2], Mal Moore, Dave Hart, and Robert Witt.  (Doc. # 20).  Plaintiff was in charge of all aspects of the cheerleading program at the University of Alabama ("UA") from 1987 until her termination on February 2, 2009.  (Doc. # 20 ¶¶ 11, 12, 26).  Plaintiff worked year-round, and her duties included supervising the cheerleaders and mascots, developing and managing cheerleader summer camps for high school students, and coaching the student dance line from 1992 to 2004.  (*Id*. ¶¶ 12, 13).

Plaintiff was employed with UA but did not have a written contract for employment.  (*Id*. ¶ 18).  She was paid a salary for some of her duties and also received a small percentage of the net profits from the summer camps she ran.  (*Id*.)  She was paid $2,000 as a part-time employee in 1987, and her salary increased such that in the last two years of her employment she earned $50,000.  (*Id*. ¶ 19).  She was required to work from 8:00 a.m. to 5:00 p.m. during the week but was never compensated for any overtime, though she frequently worked overtime by traveling out of town with

---

[1]A review of Plaintiff's Complaint demonstrates that Plaintiff has not entirely complied with the court's December 15, 2011 order.  By asserting several claims against Defendants that are barred on immunity grounds, Plaintiff has disregarded the court's instruction to ensure that each claim has a proper legal basis.  Further, her counts for relief do not clearly identify the claims she intended to assert, and the court has been forced to attempt to discern the claims Plaintiff intended to assert.  Moreover, Plaintiff has recited a number of factual allegations that are simply irrelevant to her claims.  The court understands that Plaintiff feels underappreciated by her former employer, but a lawsuit is not the proper place to air her grievances that are not related to any legal claims.  Finally, as a whole, Plaintiff's Amended Complaint teeters on the line between a shotgun and a sufficient pleading.  Although her Amended Complaint does not comply with portions of the court's December 15, 2011 order, the court addresses below whether Plaintiff's claims satisfy the pleading standards and does so in an attempt to ensure that the lawsuit proceeds expeditiously.

[2] Plaintiff's allegations rest on the assumption that the UA Board of Trustees is responsible for the acts of UA's employees and was Plaintiff's employer.  Defendants have not challenged this assertion.  Further, although Plaintiff has not directly claimed that the UA Board of Trustees is her employer, courts within this district have construed the UA Board of Trustees as the "employer" of the UA employees.  *See, e.g.*, *White v. Bd. of Trustees of Univ. of Ala.*, 31 F. Supp. 2d 953, 954 (N.D. Ala. 1999).  Plaintiff has also stated that the UA Board of Trustees is the governing authority of UA.  For the purposes of Defendants' motion only, the court will treat the UA Board of Trustees as Plaintiff's employer.

the cheerleaders for athletic events.  (*Id*.)  Plaintiff was required to annually sign forms for UA acknowledging that she was an exempt employee under the FLSA.  (*Id*. ¶ 21).

Plaintiff alleges that her duties were substantially similar to the duties performed by male coaches of athletic teams at UA, and that the male coaches were allowed to work fewer hours than Plaintiff but were paid more than Plaintiff. (*Id*. ¶ 12).  Further, Plaintiff asserts that "her duties . . . required the same time, skill and expertise of other coaches, and likely had a broader impact on the target audience of [UA] for student recruitment."  (*Id*. ¶ 13).  Additionally, Plaintiff asserts that her work "significantly enhanced the image" of UA and helped "bring prestige and attention" to UA by aiding in recruiting students and increasing revenue.  (*Id*.)  She also asserts that she gained a national reputation for her work in "spirit team management and development."  (*Id*. ¶ 16).

Moore is the Athletic Director at UA, and was Plaintiff's supervisor during most of her employment at UA.  (*Id*. ¶ 14).  Hart is the Assistant Athletic Director who served as Plaintiff's supervisor during the last few months or so of her employment; Hart reported to Moore.  (*Id*. ¶¶ 14, 22).  Witt, the President of UA, supervised and controlled the athletic department while Plaintiff worked for UA, and the Board of Trustees is the ultimate governing authority at UA.  (*Id*.)  Plaintiff asserts that the individual Defendants had direct knowledge of Plaintiff's contributions, abilities, and the time she spent working.  (*Id*. ¶ 14).  She further asserts that they knew or should have known of her work duties and rate of compensation.  (*Id*. ¶ 15).

Plaintiff alleges that she complained about "the extraordinary responsibility she bore as a result of her job duties to superiors within the athletic department."  (*Id*. ¶ 22).  She also asserts that she spoke with Carole Keyes, her direct supervisor, several times about "funding for services and personnel that she felt would benefit [UA's] cheerleading program, and eliminate some of the work

3

load she was being expected to carry." (*Id*. ¶ 22). Due to these communications, Plaintiff asserts that Defendants were aware of her complaints, and that Defendants consequently acted in retaliation for her complaints. (*Id*.) Plaintiff also alleges that she told Moore numerous times that she needed a more equitable level of compensation and that her athletes needed more support. (*Id*. ¶ 23). Further, she allegedly discussed these same concerns with Hart when he took over Moore's daily duties. (*Id*. ¶¶ 22-23). Specifically, Plaintiff claims she sought (1) secure and certain practice locations; (2) tutoring and scholastic scheduling assistance for the athletes under her direction; and (3) additional scholarship funding for the cheerleaders and mascots. (*Id*. ¶ 23). According to Plaintiff, her requests were ignored. (*Id*.)

Moreover, Plaintiff asserts that a group of parents, whose children were students under her direction, sent a letter to Witt asking for support for the cheerleading program and reiterating Plaintiff's requests. (*Id*. ¶ 24). Witt never granted the requested support. (*Id*.)

Plaintiff also asserts that though she always received excellent employee reviews, she was terminated on February 2, 2009. (*Id*. ¶¶ 25-26). She was simply handed a letter informing her that she was terminated for "poor judgment." (*Id*. ¶ 26). She states that she was offered no further details on her termination, nor was she offered a hearing. (*Id*.) When she was terminated, she was months away from reaching her twenty-five years with the State of Alabama Teacher's Retirement System, of which both Moore and Hart were aware. (*Id*. ¶ 27). She requested to be moved to another location at UA to secure her retirement benefits – contending that similar arrangements had been made for other long-term employees who were dismissed shortly before they reached retirement status – but her request was denied. (*Id*.)

On the day she was terminated, Plaintiff was informed by a representative of the UA Board of Trustees that she would receive the remainder of her earnings from the summer camps and compensation for sick days and vacation days she had not taken, which amounted to a sum of approximately $26,000. (*Id*. ¶ 30). However, soon after her termination, she received a letter from the Human Resources department at UA informing her that these funds were being withheld under UA's policy pending the results of an audit. (*Id*. ¶ 31). Plaintiff asserts that these funds are still being withheld from her without justification. (*Id*.)

Plaintiff asserts that after she filed her EEOC charge, UA informed her that it was requesting the Tuscaloosa County District Attorney to seek an indictment of Plaintiff for financial malfeasance. (*Id*. ¶ 37). She alleges that she has never received an explanation for the accusation of financial malfeasance. (*Id*.) On June 28, 2011, Plaintiff was indicted by a grand jury in Tuscaloosa on criminal charges of theft of property and ethics violations as a public employee.[3] (*Id*. ¶ 38). Plaintiff asserts that the representations made to law enforcement officials by UA (through its agents) were knowingly false, designed "to create a suspicion of wrong doing sufficient for a probable cause arrest" against Plaintiff and made in retaliation for Plaintiff filing an EEOC charge. (*Id*. ¶ 39). Further, Plaintiff asserts that she was replaced by a younger male (under the age of 40), and though he has since left, he also was replaced by someone under the age of 40. (*Id*. ¶ 40).

Moreover, Plaintiff alleges that Defendants acted in concert and with wanton and reckless disregard for Plaintiff's reputation, emotional distress, and future employment opportunities, and

---

[3] Plaintiff does not allege the date on which she was indicted or the reasons for her indictment, but the news article she has cited provides these details. *See* Chase Goodbread, Ex-UA cheer choach charged with theft, TUSCALOOSA NEWS, http://www.tuscaloosanews.com/article/20110702/NEWS/110709966 (July 2, 2011, 3:30 AM). Thus, since Plaintiff has cited the article, the court gleans the date of Plaintiff's indictment and the bases for the indictment from this article.

have published or caused to be published false allegations insinuating dishonest acts or thievery by Plaintiff "in retaliation for her civil rights complaint."  (*Id*. ¶ 32).  Plaintiff asserts that Defendants have hurt her reputation and employment prospects.  (*Id*. ¶ 36).  Further, she claims that Defendants have caused her emotional distress and actual pain and suffering by publicly humiliating her and prohibiting her from entering UA's property.  (*Id*. ¶ 36).

Plaintiff asserts the following claims against all four Defendants in her Amended Complaint: (1) a violation of Title VII; (2) a § 1983 claim for "the taking and deprivation of her property, earnings, and employment without Due Process" and a claim under § 6-5-260 of the Alabama Code for the wrongful taking of her property; (3) a violation of the Fourteenth Amendment for deliberate indifference to Plaintiff's substantive constitutional rights; (4) a claim under the Age Discrimination in Employment Act ("ADEA"); (5) a claim under the Fair Labor Standards Act ("FLSA"); (6) a violation of Title IX of the Education Amendments of 1972; and (7) defamation, slander, and libel under the Alabama Code.  (*Id*. ¶¶ 43-52).  Plaintiff requests compensation for back wages, future wages she would have earned, loss of her reputation, humiliation, embarrassment, and mental distress.  (*Id*. ¶ 53).  She further seeks attorney's fees, costs of this action, experts and actual witness fee costs, interest, and any other damages to which she is entitled.

Plaintiff claims that she has exhausted the administrative remedies for her Title VII and ADEA claims, and has attached her EEOC Charge of Discrimination and Right to Sue Letter (Docs. # 20-1, # 20-2).  In her EEOC charge, Plaintiff alleged sex and age discrimination claims against Defendant UA.  The stamp on the charge indicates that it was received by the EEOC on August 3,

2009.[4]  (Doc. # 20-1 at 2).  Plaintiff did not check the box for retaliation nor did she otherwise allege

in her administrative charge that Defendants retaliated against her.  (*Id*. at 2).  Plaintiff's right to sue

letter is dated April 22, 2011.[5]  (Doc. # 20-2 at 2).

In Defendants' Motion to Dismiss (Doc. # 21), filed February 3, 2012, Defendants argue that

Plaintiff's Amended Complaint is due to be dismissed because it is a shotgun pleading, and Plaintiff

has failed to correct the deficiencies that existed in her original Complaint.   In the alternative,

Defendants seek dismissal, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure, arguing that several of Plaintiff's claims are barred by the statute of limitations, that

Defendants are subject to immunity against certain claims, that Plaintiff has failed to state plausible

claims to relief, and that the court should decline to assert jurisdiction over Plaintiff's state law

claims.  Defendants' arguments are discussed in more detail below.  *See infra* Part III.

On February 27, 2012, Plaintiff filed her Response (Doc. # 22), discussing most of

Defendants' arguments in detail.  *See infra* Part III.  Plaintiff's Response was filed seventeen days

past the deadline for doing so, without any request for permission to file a late response.  Defendants

filed a reply on March 1, 2012 (Doc. # 23), where they moved to strike Plaintiff's Response for being

late.  Alternatively, Defendants also reiterated their arguments for dismissal.  Plaintiff has filed a

---

[4]  Plaintiff stated that she filed "charges" of discrimination with the EEOC on July 31, 2009, but the exhibits attached contain only one EEOC charge, which was received by the EEOC on August 3, 2009.  Defendants submitted a different EEOC charge, along with their original Motion to Dismiss, that was filed by Plaintiff against UA and received by the EEOC on August 25, 2009 (Doc. # 5-1 at 2).  Since the court's December 15, 2011 order instructed Plaintiff to submit all exhibits referenced by her claims, the court presumes that the EEOC Charge attached to her Amended Complaint is the only EEOC charge encompassing her claims in this lawsuit. Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F. 3d 1189, 1206 (11th Cir. 2007).  Accordingly, the EEOC charge controls over Plaintiff's allegations as to the date the charge was filed and the number of the charges she filed.

[5]  The right to sue letter submitted by Plaintiff is dated April 22, 2011.  (Doc. # 20-2 at 2).  Thus, the court views Plaintiff's statement that she received the right to sue letter on May 2, *2009* as a mistake, and presumes Plaintiff intended to state that she received the document on May 2, *2011*.

response (Doc. # 24) to Defendant's motion.[6]  Plaintiff explained why her Response was filed late and urged the court not to strike her Response.

Before turning to the merits of Defendants' Motion to Dismiss, it is necessary to address some preliminary matters.  First, Plaintiff previously missed the January 11, 2012 deadline to file her Amended Complaint, and on January 12, 2012, she filed a Motion requesting an additional seven days to file an Amended Complaint.  On January 13, 2012, the court granted Plaintiff's request (Doc. # 19).  Although Plaintiff filed her request for additional time to file her amended complaint after the deadline for filing her amended complaint had passed, the court noted, in the face of Defendants' adamant opposition, that granting Plaintiff's request would not prejudice the parties or unduly delay the lawsuit.  However, because the court allowed Plaintiff to file a motion one day late on that occasion does not give Plaintiff or Defendants a license to thereafter disregard the court's deadlines. There is simply no excuse for Plaintiff's filing of her Response seventeen days late.[7]

Although the court declines to strike Plaintiff's Response, and thus will deny Defendants' motion to strike (Doc. # 23), the parties are forewarned: late filed documents will not be well received by this court.  Neither party in this case is permitted to file any document past any

---

[6] Defendants' Reply is not titled a motion and has not been designated as one on the docket sheet.  However, it contains a request for the court to strike Plaintiff's Response, so the court construes Defendants' Reply as a motion in part and thus construes Plaintiff's "Response to Defendants['] Reply" (Doc. # 24) as a response to Defendants' motion. Plaintiff's "response," filed March 11, 2012, was thus filed late, and should have been filed by March 8, 2012. Additionally, the Federal Rules do not contemplate a surreply, and to the extent Plaintiff's filing on March 11, 2012, was intended to be in part a surreply, the court declines to consider it.  The court only reviews Plaintiff's March 11, 2012, filing as a response to Defendants' request to strike Plaintiff's Response.

[7] Although the court received an email from Plaintiff's counsel on February 25, 2012, stating that she was having trouble electronically filing the Response, February 25, 2012 was still over two weeks past the February 10, 2012, deadline.  Further, Plaintiff's counsel cannot feign ignorance of that deadline because the court issued an order on July 21, 2011 (Doc. # 6), directing that any non-summary judgments motions filed in this case are governed by Exhibit B without further order from the court.  If technical difficulties caused counsel to miss a deadline, she should have (1) called chambers to explain the issue and (2) requested permission to file a late brief *before* the deadline expired.

applicable deadline without seeking permission, and any requests for an extension of time must be supported by good cause. Failure to timely file a document or timely seek an extension will result in the court striking the document. Moreover, the parties are strongly advised to review Exhibit B (Doc. # 6) and the court's Initial Order (Doc. # 9).

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

Challenges to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can exist in two substantially different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). When presented with a facial attack on the complaint, the court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. The court proceeds as if it were evaluating a Rule 12(b)(6) motion; that is, it views the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *Id.*

On the other hand, factual attacks question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a court is confronted with a factual attack, the standard of review diverges considerably:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).  "When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion."  *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984).

###  B.   Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A plausible claim for

relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

11

III.     **DISCUSSION**[8]

A.      **Count 1: Plaintiff's Title VII Claims**

1.      **The Individual Defendants Cannot Be Held Liable Under Title VII.**

Plaintiff asserts her claims in Count 1 under Title VII[9] against all of the Defendants, though she states in her Response that these claims are brought against the individual Defendants only in their official capacities.[10]  Defendants argue that Plaintiff's Title VII claim cannot be asserted against the individual Defendants and that Plaintiff has failed to assert a plausible Title VII claim.

The Eleventh Circuit has repeatedly held that individual capacity defendants cannot be held liable under Title VII.  *See, e.g., Albra v. Advan, Inc.*, 490 F. 3d 826, 830 (11th Cir. 2007).  However, Title VII claims may be asserted against individuals in their official capacities, which is essentially a suit against the employer.  *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F. 3d 1490, 1504 (11th Cir. 1995).  When the plaintiff's employer is named as a defendant in a Title VII lawsuit, the claims against the employer's agents are redundant and unnecessary and thus due to be dismissed.  *See, e.g.*, *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000).

---

[8] Defendants have presented a slew of arguments for dismissal with respect to each of Plaintiff's seven claims, and Plaintiff has responded in turn.  The court finds it is unnecessary to address each one of these arguments.

[9] The Lilly Ledbetter Fair Pay Act of 2009 ("Lilly Ledbetter Act") amended Title VII, specifically 42 U.S.C. § 2000e-5(e).  It extends the time period for Title VII claims based on discriminatory compensation and provides that an unlawful employment action occurs each time an employee is paid under a discriminatory compensation scheme.  *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5.  Thus, Plaintiff's claims under Title VII and the Lilly Ledbetter Act are one claim; the latter Act simply altered the time period for bringing Title VII claims.

[10] Plaintiff has clarified several times in her Response that a claim has been asserted against the individual Defendants only in their official capacities.  The better course of action would have been for Plaintiff to make this clear in her Amended Complaint so that Defendants (and the court) did not have to waste its time discussing these claims against the individual Defendants.

Here, Plaintiff cannot assert her Title VII claims against Defendants in their individual capacities. Also, because Plaintiff has named the UA Board of Trustees as a Defendant, her Title VII claims against Hart, Moore, and Witt in their official capacities are redundant and thus due to be dismissed with prejudice.

### 2. Plaintiff Has Stated a Plausible Claims for Relief by Alleging Sex Discrimination Based on Disparate Pay Under Title VII.

"Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case . . . it must provide 'enough factual matter (taken as true) to suggest' intentional [] discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F. 3d 955, 974 (11th Cir. 2008) (citations omitted). To establish a prima facie case of disparate pay under Title VII, the plaintiff must demonstrate that she held a position "similar to that of a higher paid employee who is not a member of [her] protected class." *Crawford v. Carroll*, 529 F. 3d 961, 974-975 (11th Cir. 2008) (citing *Meeks v. Computer Assocs. Int'l*, 15 F. 3d 1013, 1019 (11th Cir. 1994)).

Defendants argue that Plaintiff has failed to state a plausible claim under Title VII by failing to name an "adequate comparator" and never addressing the requirements of her job compared to those of her comparators. However, Plaintiff's allegations need only include "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support her claim. After carefully reviewing the Amended Complaint, the court concludes that Plaintiff's allegations have sufficiently done so with respect to her Title VII pay claim against the UA Board of Trustees. *See Twombly*, 550

13

U.S. at 556.  Thus, at least on the pleadings, Plaintiff has alleged a plausible claim to relief for a disparate pay claim based on sex under Title VII against the UA Board of Trustees.[11]

**B.      Count 2: Plaintiff's Due Process Claims Under § 1983 and Claims Under § 6-5-260 of the Alabama Code**

In Plaintiff's second count she alleges that Defendants deprived her of her property, earnings, and employment, in violation of her due process rights under § 1983.  The court construes Plaintiff's claim as one for procedural due process under the Fourteenth Amendment.  Plaintiff also asserts that Defendants' conduct constituted violations of § 6-5-260 of the Alabama Code.  Defendants argue that these claims are barred by the statute of limitations, the Defendants are entitled to Eleventh Amendment immunity, the individual Defendants are entitled to qualified immunity against the § 1983 claims, the Defendants are entitled to state law immunity from the state law claim, Plaintiff has failed to allege plausible § 1983 and state law claims, and the court should decline jurisdiction over the state law claim.

**1.      Plaintiff's § 1983 Claims**

Section 1983 is a vehicle for redressing violations of federal rights and does not itself create any substantive rights.  *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010); 42 U.S.C. § 1983.  To assert a cause of action based on § 1983, a plaintiff must establish two

---

[11] Defendants have not construed Plaintiff's Title VII claims as containing a retaliation claim, and a review of Plaintiff's first cause of action, alleged under Title VII, indicates that Plaintiff only asserted a disparate pay claim. (Doc. # 20 ¶¶ 43-44). Though Plaintiff makes mention of alleged retaliation in her complaint, and even alleges retaliation under Title IX in her sixth cause of action, nothing in Plaintiff's first cause of action leads the court to believe that she has attempted to assert a retaliation claim.  The court was therefore surprised when reading that portion of argument in Plaintiff's Response in which she contends that she has satisfied the elements of a prima facie case for retaliation under Title VII. (Doc. # 22 at 2).  The court concludes that Plaintiff has not alleged a retaliation claim under Title VII in her Complaint, and she is not permitted to assert a new cause of action in her Response to Defendant's Motion to Dismiss. *See, e.g., Lewis v. State Farm Fire and Cas. Co.*, 2011 WL 1642313, at *6 n.9 (S.D. Ala. Apr. 13, 2011).  Further, Plaintiff was granted an opportunity to replead her claims, but still has not asserted a Title VII retaliation claim.

elements: (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). Section 1983 does not abrogate a state's Eleventh Amendment immunity, and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

"[F]ederal courts lack [subject-matter] jurisdiction to entertain claims that are barred by the Eleventh Amendment." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F. 3d 1252, 1256 (11th Cir. 2001). The Eleventh Amendment precludes private individuals from suing non-consenting states in federal court. *Id*. In addition to protecting states from suit by private individuals in federal court, Eleventh Amendment immunity has been extended to state agencies and instrumentalities and state officials. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). The Alabama Supreme Court and the Eleventh Circuit have held that a state university in Alabama is considered an agency or instrumentality of the state. *See id*.; *Rigby v. Auburn Univ.*, 448 So. 2d 345 (Ala. 1984); *see also Cox v. Bd. of Trustees of Univ. of Ala.*, 161 Ala. 639, 648 (Ala. 1909) (the Board of Trustees of the University of Alabama are "mere agents of the state"); *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006) (the UA Board of Trustees is a state agency for Eleventh Amendment immunity purposes); *Harris v. Bd. of Trs. Univ. of Ala.*, — F. Supp. 2d — , 2012 WL 669847, at *5 (N.D. Ala. Feb. 27, 2012) (the UA Board of Trustees is a state agency and thus entitled to Eleventh Amendment immunity against § 1983 claims). Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citations omitted); *see Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084, 1088 (N.D. Ala. 2003) (Coogler, J.) (concluding that

15

Witt, in his official capacity as President of UA, is immune from suit under the Eleventh Amendment).

Therefore, because UA is a state agency entitled to Eleventh Amendment immunity against § 1983 claims, Plaintiff's § 1983 claim is due to be dismissed with prejudice against UA. *See Harden*, 760 F. 2d at 1163; *Eubank*, 210 F. App'x at 844; *Harris*, 2012 WL 669847, at *5. Further, Plaintiff's § 1983 claims against the individual Defendants in their official capacities as state officials are due to be dismissed with prejudice. *See Will*, 491 U.S. at 71; *Price*, 318 F. Supp. 2d at 1088.

However, "[s]tate officials acting in their individual capacities are not protected by the sovereign immunity conferred by the Eleventh Amendment." *Harden*, 760 F. 2d at 1164. In certain circumstances, however, state officials sued in their individual capacities may find protection from suit under qualified immunity.

Qualified immunity shields government officers sued in their individual capacities from liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Smith ex rel. Smith v. Siegelman*, 322 F. 3d 1295 (11th Cir. 2003) (citing *Vinyard v. Wilson*, 311 F. 3d 1340, 1346 (11th Cir. 2002)). "Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Id*. (citing *Vinyard*, 311 F. 3d at 1346). To determine whether qualified immunity applies, the Supreme Court has set forth a two-part test which makes two inquiries: (1) whether the officer's

conduct violated a constitutional right, and (2) whether the right was "clearly established" when violated. *Id*. (citing *Vinyard*, 311 F. 3d at 1346 and quoting *Saucier v. Katz*, 533 U.[12]S. 194, 201 (2001)).  Courts have flexibility in determining the order in which to approach this two-part test, and if courts determine that a right was not clearly established, they need not discuss whether a constitutional violation occurred at all.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The court cannot determine whether the individual Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims at this juncture; the resolution of this issue on motion practice is better suited for summary judgment analysis once the facts have been further developed.

Along these same lines, whether Plaintiff's § 1983 claims against the individual Defendants are barred by the two-year statute of limitations or subject to the continuing violation doctrine similarly cannot be determined on the record before the court at this point.  Indeed, the court has carefully considered Plaintiff's Amended Complaint and concludes that Plaintiff has satisfied the applicable pleading standards for her § 1983 claims against the individual Defendants in their individual capacities.

### 2.    Plaintiff's § 6-5-260 Claim

Defendants argues that they are subject to state law immunity against Plaintiff's § 6-5-260 claim under Alabama law and that Plaintiff has failed to state a plausible claim to relief.  In Plaintiff's Response, she does not challenge Defendants' argument that the UA Board of Trustees is entitled to state law immunity.  She argues only that the individual Defendants are not entitled to

---

[12] Qualified immunity is immunity from suit and not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  For this reason, "[t]he Supreme Court has urged [courts] to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation ... ."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).  Therefore, the parties are directed to confer regarding a proposed scheduling order bifurcating discovery so that qualified immunity issues may be taken up at the earliest practical stage.

state immunity (and it seems, she argues this with respect to both their official and individual capacities). Plaintiff also asserts that this determination is not proper on a Rule 12(b)(6) motion.[13]

Section 6-5-260 of the Alabama Code furnishes a cause of action for conversion. It provides that "[t]he owner of personalty is entitled to possession thereof. Any unlawful deprivation of or interference with such possession is a tort for which an action lies." *Id.*

Article 1, § 14 of the Alabama Constitution provides that the State of Alabama can never be a defendant in any court of law or equity. Sovereign immunity under § 14 bars a court from having subject-matter jurisdiction over claims against the State. *Ex parte Ala. Dep't of Mental Health and Retardation*, 837 So. 2d 808, 810 (Ala. 2002) (citations omitted). Additionally, "under § 14, State agencies are 'absolutely immune from suit.'" *Ala. Dep't of Transp. v. Harbert Int'l, Inc.*, 990 So. 2d 831, 839 (Ala. 2008) (citing *Lyons v. River Road Constr., Inc.*, 858 So. 2d 257, 261 (Ala. 2003)); *see Harris*, 2012 WL 669847, at *7 (the UA Board of Trustees is a state agency entitled to state law immunity). Here, the UA Board of Trustees is undoubtedly a state agency and is thus entitled to state immunity under the Alabama Constitution. *See Harris*, 2012 669847, at *7; *Ala. Dep't of Transp.*, 990 So. 2d at 839. Thus, the UA Board of Trustees are entitled to state immunity from Plaintiff's § 6-5-260 claim.

Moreover, "'[t]he State cannot be sued indirectly by suing an officer in his or her official capacity. . . .'" *Id.* (citing *Lyons*, 858 So. 2d at 261). "Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State." *Id.*

---

[13] Plaintiff has not defended her § 6-5-260 claim against Defendants' argument that she has failed to state a plausible claim to relief under Alabama law. The court views the failure to defend this claim on this ground as an abandonment of the claim, which is, in itself, grounds for dismissal. *See White v. GA Dep't of Motor Vehicle Safety*, 2006 WL 1466254, at *1 (N.D. Ga. May 18, 2006). However, as courts generally still address the merits of an argument that has not been contested, the court continues to the merits of Defendants' argument for dismissal.

(citing *Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004)).  In determining whether a claim against a state employee is actually one against the State, the Alabama Supreme Court considers "whether a result favorable to the plaintiff would directly affect a contract or property right of the State, . . . whether the defendant is simply a conduit through which the plaintiff seeks recovery of damages from the State, . . . and whether a judgment against the officer would directly affect the financial status of the State treasury . . . ."  *Id.* (internal quotations and citations omitted).

If a state employee is sued in his individual capacity, he may be shielded from suit under state-agent immunity.  The Alabama Supreme Court has established an extensive fact-based test for determining whether a state employee sued in his individual capacity is entitled to state-agent immunity under Alabama law.  *Ex parte Butts*, 775 So. 2d 173, 177-178 (Ala. 2000) (adopting the test set out by the plurality in *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).  To establish immunity, the state agent must first demonstrate that a plaintiff's claims arise from a function that would entitle the state agent to immunity, and the burden then shifts to the plaintiff to show that the state agent acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  *Ex parte Auburn University*, 6 So. 3d 478, 487 (Ala. 2008).

Although the parties have provided arguments and authorities regarding whether the individual Defendants are subject to state immunity, their arguments are somewhat conclusory and they have not analyzed all of the factors necessary to make the immunity determination.  Further, the resolution of whether the individual Defendants are entitled to state immunity hinges on the facts of this case, which have not yet been developed.  An analysis of whether Hart, Moore, and Witt are subject to state immunity on Plaintiff's § 6-5-260 claim under Alabama law is therefore not appropriate at this time, and should be revisited at summary judgment (with a more complete Rule

56 record).  After carefully reviewing the Amended Complaint, the court concludes that Plaintiff has satisfied the pleading requirements for her § 6-5-260 claim under Alabama law.

### C.   Count 3: Plaintiff's Fourteenth Amendment Claims

Plaintiff alleges in her third count that Defendants failed "to take any remedial action" as set forth in paragraph 43 and that their actions violated the Fourteenth Amendment for "Deliberate Indifference to Plaintiff's Substantive Constitutional Rights."  It is unclear what facts Plaintiff relies on to support this claim.  Plaintiff incorporates paragraphs 11-41, which comprise all of the facts in the Amended Complaint, and references paragraph 43, which merely incorporates the preceding paragraphs.  Plaintiff's Count 3 is so vague that the court is not certain what claim Plaintiff has attempted to assert or what facts support this claim.  The court concludes that Plaintiff has failed to state a plausible claim to relief in Count 3, and has violated the court's December 15, 2011 order by pleading such a vague claim.

Further, Plaintiff has not defended this claim in her Response to Defendant's Motion for Summary Judgment, and it seems that she has abandoned this claim.  Failure to respond to argument relating to a claim constitutes abandonment of the claim, and alone warrants dismissal of the claim.  *See, e.g., Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir.1995).

For these reasons, Plaintiff's claim in Count 3 is due to be dismissed without prejudice.  To the extent Plaintiff wishes to re-file this claim, she must file a motion requesting leave to file such a claim, within seven (7) days of the entry of this order, and present the proposed, amended claim to the court.  If the claim complies with the applicable pleading requirements and the court's December 15, 2011 order, the court will permit Plaintiff to assert an amended Count 3.

### D.      Count 4: Plaintiff's ADEA Claims

Defendants argue that the UA Board of Trustees is subject to Eleventh Amendment immunity against this claim, the individual Defendants cannot be sued under the ADEA, and that Plaintiff failed to state a claim.

The ADEA provides a cause of action for individuals who are at least forty years of age from age discrimination in employment. 28 U.S.C. § 631(a). States are subject to Eleventh Amendment immunity against claims under the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 93 (2000). As previously discussed, Eleventh Amendment immunity extends to state entities, such as boards of trustees of state universities. *Id.*; *see Shuler v. Bd. of Trustees of Univ. of Ala.*, 2012 WL 2533524, at *3 (11th Cir. 2012) (holding that the Board of Trustees of the University of Alabama at Birmingham is entitled to Eleventh Amendment immunity from ADEA claims). Therefore, the UA Board of Trustees is immune from Plaintiff's ADEA claims.

Further, individual defendants cannot be held personally liable under the ADEA. *Albra*, 490 F. 3d at 830; *see Mason v. Stallings*, 82 F. 3d 1007, 1009 (11th Cir. 1996) (the definition of "employer" under the ADEA does not provide for individual liability, so individuals cannot be held liable under the Act) (citing *Smith v. Lomax*, 45 F. 3d 402, 403 n.4 (11th Cir. 1995)). Thus, Plaintiff cannot assert ADEA claims against the individual Defendants and these claims are due to be dismissed with prejudice.

Plaintiff stated in her Response that her ADEA claims are asserted against the individual Defendants in their official capacities as agents of UA. However, as discussed above, individuals cannot be held liable under the ADEA. *See Albra*, 490 F. 3d at 830. Moreover, because Plaintiff's ADEA claims against the individual Defendants in their official capacities are essentially claims

against UA or the UA Board of Trustees, these also are barred by the Eleventh Amendment.  Thus, even if ADEA claims against Hart, Moore, and Witt in their official capacities were proper, the claims are barred on immunity grounds.[14]  *See id.*

**E.      Count 5: Plaintiff's FLSA Claims**

Defendants argue that Plaintiff's FLSA claims are barred by the statute of limitations, that the Defendants are subject to immunity on this claim, and that Plaintiff has failed to state plausible FLSA claims.  Plaintiff counters each of Defendants' arguments.[15]

The Eleventh Circuit has held that a state is entitled to Eleventh Amendment immunity against private suits for damages under the FLSA.  *Powell v. Fla*, 132 F. 3d 677, 678 (11th Cir. 1998) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996)).  This immunity extends to the UA Board of Trustees, as a state entity, and the individual Defendants, in their official capacities as state actors.  *See Will*, 491 U.S. at 71.  Further, a person cannot be held individually liable under the FLSA unless he is an "employer" within the meaning of the Act, 29 U.S.C. § 207(a)(1), and the Eleventh Circuit has held that "a public official sued in his individual capacity is not an 'employer' subject to individual liability under the FLSA."  *Wascura v. Carver*, 169 F. 3d 683, 686 (11th Cir. 1999) (citing *Welch v. Laney*, 57 F. 3d 1004, 1011 (11th Cir. 1995)); *see Stratton v. Ala. Dep't of Corr.*,

---

[14] In Plaintiff's Response, Plaintiff acknowledges that state employees cannot be sued for money damages for age discrimination, but asserts that *Ex parte Young* permits state officials to be used for prospective injunctive relief when violating federal law.  209 U.S. 123 (1908).  Plaintiff's reliance on *Ex parte Young* for the argument that the UA Board of Trustees is not subject to immunity is confusing.  Plaintiff has not requested any sort of injunctive relief in this lawsuit, and only mentions injunctive relief once in her Amended Complaint when describing the relief provided for by Title IX (Doc. # 20 ¶ 2).  As such, *Ex parte Young* has no bearing on Plaintiff's claims.

[15] In Plaintiff's Response, when discussing her claims in Count 5, Plaintiff discusses her FLSA claim and makes reference to the Equal Pay Act.  The court was surprised by Plaintiff's discussion of an Equal Pay Act claim because Plaintiff has not alleged an Equal Pay Act claim in her Amended Complaint.  As previously mentioned, Plaintiff cannot assert a new cause of action in her Response to Defendant's Motion to Dismiss.  *See, e.g., Lewis v. State Farm Fire and Cas. Co.*, 2011 WL 1642313, at *6 n.9 (S.D. Ala. Apr. 13, 2011).  Indeed, the court is not required to address the merits of a claim that Plaintiff has not alleged in a pleading.

2006 WL 752963, at *3 (M.D. Ala. March 23, 2006) (holding that the individual Defendants – employees of the Alabama Department of Corrections – were immune from FLSA claims in their individual capacities).  Accordingly, Hart, Moore, and Witt also cannot be sued in their individual capacities under the FLSA, *see id*., and Plaintiff's FLSA claims against all of the Defendants are due to be dismissed with prejudice.[16]

### F.        Count 6: Plaintiff's Title IX Claims

Plaintiff alleges that she was retaliated against for complaining about her inequitable pay and the disparate treatment her students received.  She asserts that Defendants' retaliatory conduct included terminating her employment.  Defendants argue that Plaintiff's Title IX claim is barred by the statute of limitations, cannot be asserted against the individual Defendants, and fails to state a plausible claim to relief.  Further, Defendants argue that Plaintiff cannot use Title IX to avoid Title VII requirements.  Plaintiff responds in turn, and clarifies that her Title IX claim has only been asserted against Defendants in their official capacities.

"Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."  *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F. 3d 1282, 1300 (11th Cir. 2007) (citing *Hartley v. Parnell*, 193 F. 3d 1263, 1270 (11th Cir. 1999)). Plaintiff asserts that she has alleged her Title IX claims against the individual Defendants in their official capacities as state agents.  However, the court is not aware of (nor has Plaintiff provided) any cases in this Circuit that have permitted a Title IX claim to proceed against an individual in his official capacity.  Further, in *Williams v. Board of Regents of University System of Georgia*, the

---

[16] Plaintiff once again raises the fact that state officials can be sued in their official capacities for prospective injunctive relief under *Ex parte Young*.  As noted previously, Plaintiff has not sought injunctive relief in her Amended Complaint, so the principle discussed in *Ex parte Young* has no bearing here.  *See supra* note 13.

Eleventh Circuit affirmed the district court's dismissal of the Title IX claims against the individual defendants in both their individual and official capacities.  477 F. 3d at 1290, 1300.  Although the Eleventh Circuit did not address the difference – if any – between pleading a Title IX claim against individuals in their official and individual capacities, the court construes that case (as well as the other cases that have barred Title IX claims against individuals) as holding that individuals cannot be sued under Title IX under *any* capacity.  Moreover, the Eleventh Circuit in *Williams* addressed for the first whether a plaintiff can use § 1983 to assert a Title IX claim against individual school officials, and held that allowing a plaintiff to do so would "permit an end run around Title IX's explicit language limiting liability to funding recipients." *Williams*, 477 F. 3d at 1300.  Accordingly, it is clear that Title IX claims cannot be asserted against individuals, and Plaintiff's Title IX claims against Hart, Moore, and Witt are thus due to be dismissed with prejudice.

A review of Plaintiff's Amended Complaint demonstrates that Plaintiff has asserted a plausible Title IX claim against the UA Board of Trustees.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) ("[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action.").  Additionally, a determination of whether Plaintiff's Title IX claim against the UA Board of Trustees is barred by the two-year statute of limitations or subject to the continuing violation doctrine proves difficult at this point because the factual contours of Plaintiff's Title IX claim are unclear and the facts have yet to be developed.  Therefore, resolution of this issue is more appropriate for summary judgment analysis.  Accordingly, after a careful review of the Amended Complaint, the court concludes that Plaintiff has set forth a plausible claim to relief against the UA Board of Trustees under Title IX.

24

### G.        Count 7: Plaintiff's Defamation Claims

Plaintiff alleges that Defendants' conduct constituted defamation, slander, and libel under § 6-5-180 *et seq.* of the Alabama Code.  Plaintiff has asserted that UA requested that the Tuscaloosa County District Attorney seek an indictment of her for financial malfeasance, that she was indicted by a grand jury for theft of property and ethics violations, that UA through its agents made knowingly false statements to law enforcement officials "to create a suspicion of wrong doing sufficient for a probable cause arrest" against Plaintiff, and that Defendants published or caused publication of false allegations insinuating dishonest acts or thievery by Plaintiff.

Defendants argue that Plaintiff's defamation claim is barred by the statute of limitations, the UA Board of Trustees is subject to immunity against the claim, the individual Defendants are subject to state immunity, and that Plaintiff has failed to state a claim.  Plaintiff responds to Defendants' arguments concerning her defamation claim in conjunction with her arguments supporting her due process claim under § 1983 in Count 2.[17]

First, as previously discussed in relation to Plaintiff's state law conversion claim, *see supra* Part III.B.2., the UA Board of Trustees is immune from Plaintiff's state law defamation claim under Article 14 of the Alabama Constitution.  *See Ala. Dep't of Transp.*, 990 So. 2d at 839.  Further, whether the individual Defendants are subject to state-agent immunity hinges on the facts of this case, which are not fully developed, and thus more suited for summary judgment analysis.  *See supra* Part III.B.2.  Additionally, Plaintiff has not alleged the dates on which the alleged defamatory

---

[17] To the extent Plaintiff has attempted to amend her Amended Complaint by discussing a "stigma-plus" defamation claim under § 1983 in her Response, she is precluded from asserting a new claim in her Response and has not properly asserted such a claim in her Amended Complaint. *See, e.g., Lewis*, 2011 WL 1642313, at *6 n.9. Plaintiff's Count 7 indicates that her defamation claim arises only under state law, and the court construes this claim as such.

statements were made, thus the court cannot determine at this point whether Plaintiff's defamation claim is barred by the statute of limitations.

Finally, the court notes that Plaintiff's defamation claim could have been more clearly asserted. However, to survive a Rule 12(b)(6) motion to dismiss, Plaintiff need only present allegations that satisfy the pleading requirements, which Plaintiff has done. As such, Plaintiff has alleged a plausible defamation claim against the individual Defendants. *See Twombly*, 550 U.S. at 556. The issues related to that claim can be fleshed out through discovery.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Doc. # 21) is due to be granted in part and denied in part. The following of Plaintiff's claims are due to be dismissed with prejudice:

- Title VII official and individual capacity claims against the individual Defendants (Count 1);
- § 1983 claims against the UA Board of Trustees and the individual Defendants in their official capacities (Count 2);
- § 6-5-260 claim under Alabama law against the UA Board of Trustees (Count 2);
- ADEA claims against all of the Defendants (Count 4);
- FLSA claims against all of the Defendants (Count 5);
- Title IX claim against the individual Defendants under all capacities (Count 6); and
- defamation claim under Alabama law against the UA Board of Trustees (Count 7).

All of Plaintiff's claims in Count 3 asserted against all of the Defendants are due to be dismissed without prejudice. Plaintiff's remaining claims are as follows:

- Title VII disparate pay claim based on sex against the UA Board of Trustees (Count 1);
- § 1983 claims against the individual Defendants in their individual capacities (Count 2);
- § 6-5-260 claim against the individual Defendants (Count 2);
- Title IX claim against the UA Board of Trustees (Count 6); and
- defamation claim under Alabama law against the individual Defendants (Count 7).

To the extent Defendants' Reply constitutes a motion to strike Plaintiff's Response, Defendant's motion to strike (Doc. # 23) is due to be denied.  A separate order consistent with this Memorandum Opinion will be issued.

      **DONE** and **ORDERED** this _____22nd_____ day of August, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE